**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | **No. 3:19-cr-64-11 (VLB)** |
| **v.** | : | |
| | : | **March 10, 2021** |
| **BENJAMIN GREGOR** | : | |
| | : | |

**ORDER ON DEFENDANT'S THIRD MOTION**
**FOR COMPASSIONATE RELEASE, [ECF NO. 1470]**

Before the Court is Benjamin Gregor's Third Motion for Compassionate Release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  [ECF No. 1470]. Mr. Gregor seeks compassionate release because he contracted the COVID-19 virus while incarcerated at FCI Allenwood, experienced mild symptoms from the virus, and speculates that his symptoms may be more severe should he be re-infected.  *Id.*

Mr. Gregor is now housed at FCI Memphis.  [ECF No. 1522]; *see also* https://www.bop.gov/inmateloc/.  The Government opposes his motion.  [ECF No. 1481].  Mr. Gregor replies and supplements his reply brief with news of his recent transfer from Allenwood to Memphis where he can participate in the R.D.A.P. Program.  [ECF Nos. 1497, 1522].  After considering the briefing, the Court denies Mr. Gregor's motion for the reasons set forth below.

I.     **Background**

    A. *Case Background*

On July 10, 2019, Mr. Gregor pled guilty to conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846.  [ECF No. 393].

On November 6, 2019, this Court sentenced Mr. Gregor to 66 months' imprisonment.  [ECF No. 760].  Mr. Gregor has been in custody since February 21, 2019 and he has a release date of October 29, 2023.  *Id.*  He was located at the medium-security camp at FCI Allenwood but was recently transferred to FCI Memphis.  [ECF No. 1522]; Inmate Locator: Benjamin Gregor, 17890-014, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/.

On June 23, 2020, Mr. Gregor moved for compassionate release.  [ECF No. 1170].  On August 13, 2020, the Court denied Mr. Gregor's motion, finding that while Mr. Gregor's BMI of 30.8 put him "in the group of people who are at increased risk of severe illness from COVID-19 according to the Centers for Disease Control," [ECF No. 1243 at 5], he did not establish extraordinary and compelling reasons for release given the low number of positive COVID inmate cases at Allenwood Medium FCI where he was housed; the Court thus could not find that his risk of contracting COVID-19 was higher at Allenwood than it would be upon release.  *Id.* at 6.  In addition, given his violent criminal history, much of which occurred while on state or federal supervision, the Court denied release because Mr. Gregor was a danger to the community.  *Id.* at 7-8.

On September 1, 2020, Mr. Gregor filed a Notice of Appeal.  [ECF No. 1283].

On December 3, 2020, Mr. Gregor filed a Renewed Motion for Compassionate Release.  [ECF No. 1412].  On December 17, 2020, the Court denied Mr. Gregor's renewed motion, finding that the numbers did not support Mr. Gregor's argument that FCI Allenwood was suffering a COVID-19 outbreak at the time, and finding that Mr. Gregor did little to address the Court's previously articulated concerns about Mr. Gregor's danger to the community should he be released.  [ECF No. 1440].

On December 22, 2020, Mr. Gregor filed a second Notice of Appeal of this Court's second denial of his motion for compassionate release.  [ECF No. 1443]. On January 27, 2021, Mr. Gregor moved to withdraw his two appeals of the Court's denial of his Compassionate Release Motions; the Second Circuit granted the motion to withdraw the same day.  [ECF No. 1461].

On January 26, 2021, Mr. Gregor filed an "Inmate Request to Staff" requesting compassionate release "based upon concerns about contracting COVID-19."  [ECF No. 1497-1]. On January 29, 2021, Acting Warden P. Gibson denied Mr. Gregor's request for compassionate release.  *Id.*

On February 3, 2021, Mr. Gregor filed a Third Motion for Compassionate Release.  [ECF No. 1470].  In the Motion, Mr. Gregor reports that he contracted COVID-19, "remains at increased risk of infection and serious illness at a facility where there continues to be varying numbers of COVID-19 infections[,] and has been on lockdown and denied participation in RDAP, making his incarceration more severe and lengthy."  *Id.* at 1.  These factors "warrant a modification of his

3

sentence so that he is released from custody and ordered to serve the remainder of his sentence under strict conditions of supervised release." *Id.* at 1-2. Mr. Gregor's supplemental brief, noting his transfer to Memphis where he can participate in the RDAP Program, contends that he is still entitled to compassionate release given his COVID-19 infection and risk of illness if re-infected. [ECF No. 1522].

### B. *Mr. Gregor's Health*

Mr. Gregor is 35. Mr. Gregor suffers from sleep apnea, mild asthma, bipolar disorder, Post Traumatic Stress Disorder and obesity, with a BMI of 30.8. [ECF No. 1170]; *see* [ECF No. 1171 (Ex. 2: Medical Records)]. The CDC identifies people with obesity ("body mass index (BMI) of 30 or higher") as "at increased risk of severe illness from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC also states that people with moderate to severe asthma "might be at an increased risk for severe illness from COVID-19." *Id.*

Mr. Gregor, upon experiencing diarrhea, nausea, and two episodes of vomiting on November 19, 2020, tested positive for COVID-19 that day. [ECF No. 1482 at 28, 36]. Mr. Gregor did not experience cough, shortness of breath, fatigue, body aches, sore throat, headache, nor loss of taste or smell. *Id.* at 28. Mr. Gregor tested negative for COVID-19 two days earlier, on November 17, 2020. *Id.* at 36. On November 20, 2020, one day after testing positive for COVID-19, Mr. Gregor was symptom-free with a temperature of 98.0 degrees Fahrenheit. *Id.* at 27. Mr. Gregor

was also symptom-free with a temperature of 98.2 on November 24, 2020, *id.* at 26, had a sore throat with a temperature of 98.0 on November 26, 2020, *id.* at 25, and was symptom-free with a temperature of 97.7 the next day, November 27, 2020, *id.* at 24, and since.  *Id.* at 23 (no symptoms on December 1, 2020; temperature 97.8).

## II.   <u>Legal Standard</u>

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)).  The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release.  18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 (as amended), imposes procedural prerequisites to filing a motion for resentencing to provide compassionate release.

First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)).   Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020).   The First Step Act amendments were intended to address past inaction by the BOP by removing the BOP as the sole arbiter of compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement.   See *id.* at 232; *see also United States v. Gamble*, No. 3:18-cr-00022-4 (VLB), 2020 WL 1955338, at *3 (D. Conn. Apr. 23, 2020) (explaining the policy purpose behind the exhaustion requirement in this context).

Recently, in *Brooker*, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" circumstances outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release.   976 F.3d at 234-36.   In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP.   *Id.* at 235-36.   In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release."   *Id.* at 236.   Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might

bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement.  *Id.* at 237.

Consequently, the Court may grant a Defendant's motion for compassionate release if:  (1) the Defendant has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) the Court finds that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As to what constitutes "extraordinary and compelling" circumstances, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffered from compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-cr-00132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020) (granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence).

Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations.  *See United States v. Rivera*, No. 3:13-cr-00071-1 (VLB), 2020 WL 3186539, at *4-5 (D. Conn. June 15, 2020); *see also, e.g., United States v. Adams*, No. 3:16-cr-00086 (VLB), 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-cr-00230

(JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020).  In determining whether a defendant's medical vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have considered a multitude of factors in factually intensive inquiries, including: defendants' age, the severity and documented history of their health conditions, defendants' history of managing those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citations omitted).

The defendant bears the burden of proving that he is entitled to a sentence reduction.  *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020).  The district courts have broad discretion in deciding whether to grant or deny a motion for compassionate release.  *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020); *see also* § 3582(c)(1)(A) ("[T]he court…may reduce the term of imprisonment...").

III.   <u>Analysis</u>

A.  *<u>The Court Lacks Authority to Grant Release</u>*

Mr. Gregor submitted a request for compassionate release to Acting Warden Gibson on January 26, 2021, which was denied three days later, on January 29, 2021.  [ECF No. 1497-1 (Warden Response to Inmate Request)].  Thirty days did not pass "from the receipt of such a request by the warden of the defendant's facility" to Mr. Gregor's filing of the motion on February 3, 2021, nor does it appear that Mr. Gregor exhausted his administrative appeal rights, as the Acting Warden made it

clear that "[i]f you are not satisfied with this response to your request, you may appeal this decision through the administrative appeal process," *id.*, yet nothing in the record indicates that Mr. Gregor so administratively appealed.  Thus, the Court lacks authority to act on this motion.  18 U.S.C. § 3582(c)(1)(A); *see also Gamble*, 2020 WL 1955338, at *2 (denying motion for compassionate release on failure to exhaust grounds and declining to excuse failure to exhaust "on account of exigent circumstances created by the COVID-19 public health emergency").

Mr. Gregor's Third Motion for Compassionate Release is therefore DENIED. Notwithstanding this denial and in the interest of efficiency and finality, the Court will address the merits of his request.

B. *"Extraordinary and Compelling Reasons"*

Even if the Court were empowered to consider Mr. Gregor's Third Motion for Compassionate Release, it would still deny the motion.

There has been no material change in circumstances militating in favor of compassionate release.  The CDC Guidance is designed to predict those individuals who may be severely impaired by a COVID-19 infection. Having contracted the disease, the Court need not rely on risk factors.  It can rely on facts. Mr. Gregor reports, and his medical records bear out that he contracted COVID-19 and fortunately did not suffer a severe case of the disease.  He further reports and his medical records indicate that he recovered from COVID-19 over three months ago with no severe health consequences.  Mr. Gregor is demonstrably not a person who is severely affected by the virus.  While reinfection is possible, there is less reason to suspect Mr. Gregor will suffer a severe case of COvID-19.

9

Moreover, FCI Memphis, where Mr. Gregor is now housed, currently has one inmate COVID-19 infection out of a population of 950 inmates, for a 0.1% infection rate, extremely low by any measure. *See* https://www.bop.gov/coronavirus/jsp.

In addition, the BOP is in the process of vaccinating staff and inmates, with 73 inmates at FCI Memphis fully vaccinated, or almost 10% of the inmate population, a number that is sure to go up rapidly in the coming weeks. *Id.*

Mr. Gregor concedes that "scientific data on the risk of a COVID-19 reinfection is mixed." [ECF No. 1470 at 4]. In light of that and the extremely mild case of COVID-19 Mr. Gregor developed, with no fever, and few symptoms apart from one sore throat and one episode of diarrhea, nausea and vomiting, the Court finds that if Mr. Gregor were to be re-infected, which is a remote possibility, his symptoms would likely be even milder, given that his body has likely developed some immunity to the disease. Once he is fully vaccinated that likelihood nears a certainty.

In sum, the Court continues to find that Mr. Gregor has not shown an extraordinary and compelling reason for his release; Mr. Gregor's COVID symptoms were very mild, he has some measure of immunity, and the facility where he is housed has a very low infection rate and is in the process of vaccinating its inmates.

### C. *"Danger to the Community"*

As the Court previously noted:

Mr. Gregor has an extensive criminal history beginning at age 20. In total, Mr. Gregor has six prior convictions spanning from a 2005

conviction for assault in the third degree to a 2017 conviction for assault in the third degree.   Of his six prior convictions, one conviction, his prior federal conviction in 2009, related to a controlled substance.   The three most recent involve altercations with women. His 2014 convictions stem from when he assaulted the mother of his children, whom he strangled and violently attacked.   His 2016 interfering/resisting conviction similarly started with an argument with a woman, as did his 2017 assault third conviction that involved 'domestic issues.'   Thus, the defendant's criminal history evidences that he continues to pose a danger to the community through his drug distribution, violence, and unwillingness to control his behavior. Further, Mr. Gregor has a pattern of committing serious offenses either while under supervision or shortly after a period of supervision. [For example,] the defendant sustained a state conviction for assault in 2014 and then violated the terms of his state probation in 2016 and 2017.   Moreover, he committed the instant offense while serving a term of state probation.   In the past five years, the defendant has violated the terms of his federal supervised release and his state probation on approximately six different occasions.

[ECF No. 1243 at 7-8 (citations omitted)].

Mr. Gregor addresses the Court's finding that he is a danger to the community in his Third Motion for Release by stating that he will live with his fiancée, Shonda Harrison, who can serve as his third-party custodian, and who can "ensure that Mr. Gregor complies with any and all terms and conditions imposed by the Court and U.S. Probation" while working full time.  [ECF No. 1470 at 6].  Mr. Gregor also points to his lack of disciplinary problems while incarcerated, "a factor that should not be discounted and that serves to address the Court's concerns that Mr. Gregor would pose a danger to the community if released."  *Id.* at 8.

The Court is not convinced that having his fiancée help supervise his release and Mr. Gregor's lack of disciplinary infractions while incarcerated outweighs the repeated "pattern of committing serious offenses either while under supervision or shortly after a period of supervision."  [ECF No. 1243 at 7-8].  This is especially true given his history of assaulting women.  Mr. Gregor offers nothing to lead the Court

11

to believe his most recent girlfriend will have any more of a neutralizing effect on him than the mother of his children and the other two women he assaulted.  The fact that he has had no disciplinary charges while incarcerated under what he describes as restrictive conditions which limit his mobility and interaction with others may be the result of incapacitation rather than rehabilitation.  Finally, Mr. Gregor has demonstrated that he is only marginally susceptible to community supervision, at best.  He has habitually violated the conditions of supervision, including committing crimes while on supervision.  Even if his current girlfriend has unusual powers of persuasion, she is not available to bring Mr. Gregor to heel because she works.

In sum, Mr. Gregor did not exhaust his administrative remedies and thereby comply with the applicable statute prior to filing his motion for release, his medical condition and other factors do not present extraordinary and compelling reasons for his release, and he remains a danger to the community.

IV.   <u>Conclusion</u>

For the reasons above, the Court denies Mr. Gregor's third motion for compassionate release.

IT IS SO ORDERED.

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: March 10, 2021**